# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
### MONROE DIVISION

**TIMOTHY L SHAW #380943**　　　　　**CASE NO.  3:19-CV-00681 SEC P**

**VERSUS**　　　　　　　　　　　　**JUDGE TERRY A. DOUGHTY**

**JAMES LEBLANC**　　　　　　　　**MAG. JUDGE KAREN L. HAYES**

## REPORT AND RECOMMENDATION

Pro se petitioner Timothy L. Shaw, an inmate incarcerated at the Louisiana State Penitentiary in Angola, filed the instant petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 on May 29, 2019. [doc. # 1]. Shaw challenges his sentence imposed in the Fourth Judicial District Court, Ouachita Parish. This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. § 636 and the standing orders of the Court.

Because Shaw cannot show he is in custody in violation of the Constitution, laws, or treaties of the United States, or that the state courts' decisions were: (1) contrary to or involved an unreasonable application of clearly established law or (2) based on an unreasonable determination of the facts in light of the evidence presented, Shaw's Petition should be **DENIED** and **DISMISSED WITH PREJUDICE**.

## Background

The facts and procedural history were summarized by the Louisiana Second Circuit Court of Appeal as follows:

> On August 21, 1993, Defendant, age 17; Charles Sumler, age 15; and Levelle Tolliver, an adult; were playing dice with a group of individuals, including Patrick W. Johnson, on the front porch of a home in Monroe. When the game ended in the early morning hours, Johnson took his money and began to leave. As he left the porch and moved toward his vehicle, Defendant and Sumler blocked his path. Both of them pointed guns at Johnson and

began pulling the triggers. When the guns did not fire, Tolliver approached Johnson, told him to give up his money and then shot him in the back of the head. Johnson died several hours later. Defendant and Sumler later admitted that they had planned to rob Johnson after the game.

Defendant, Sumler and Tolliver were all charged with second degree murder, in violation of La. R.S. 14:30.1. Tolliver's case was severed from the other two, who were tried together. Following a jury trial, Defendant and Sumler were found guilty as charged. The sentencing court imposed the mandatory sentence of life imprisonment, without benefit of probation, parole or suspension of sentence. Both appealed their conviction and sentence. In a joint opinion, this court found there was sufficient evidence to establish that they had participated in the armed robbery that resulted in Johnson's death, as required to support the convictions for second degree murder. Their convictions and sentences were affirmed. *See State v. Shaw*, 27,892 (La.App. 2 Cir. 4/3/96), 672 So.2d 237; and *State v. Sumler*, 27,893 (La.App. 2 Cir. 4/3/96), 672 So.2d 237.

Defendant subsequently filed two motions to correct illegal sentence based on *Miller v. Alabama*, 567 U.S. 460, 132 S.Ct. 2455, 183 L.Ed.2d 407 (2012) ("*Miller*"), which held that a mandatory sentencing scheme that denies parole eligibility for those convicted of a homicide committed while the offender was a juvenile violates the Eighth Amendment's prohibition against cruel and unusual punishment. The first motion, filed September 27, 2012, was denied on October 8, 2012, for lack of evidence that Defendant was a juvenile offender. The second motion, filed on October 25, 2012, was denied on April 1, 2013, on the ground that *Miller* was not retroactive.

In March 2016, the trial court ordered that counsel be appointed to represent Defendant and ordered that his presentence investigation ("PSI") report be forwarded to the court for review.

On March 24, 2016, Defendant filed a pro se motion to correct an illegal sentence, based on the ruling in *Montgomery v. Louisiana*, ––– U.S. –––, 136 S.Ct. 718, 193 L.Ed.2d 599 (2016) ("*Montgomery*"), which held that *Miller* announced a new substantive constitutional rule that was retroactive on state collateral review of defendants whose convictions and sentences were final prior to the decision in *Miller*. Defendant claimed that a resentence of life with parole was not sufficient under *Miller* and *Montgomery* and, instead, that he was entitled to be resentenced to the penalty for the next lesser-included offense of manslaughter.

On July 29, 2016, Defendant's attorney filed separate motions seeking funds to hire an investigator and an expert psychologist or psychiatrist in preparation for the *Miller* hearing on his motions to correct an illegal sentence and to amend his sentence to manslaughter. Additionally, he filed a motion to disclose any information regarding aggravating and mitigating circumstances.

On August 8, 2016, Defendant filed a memorandum in support of a motion to amend his sentence to manslaughter and argued that the trial court had authority to vacate the jury's

2

verdict and enter a judgment that he was guilty of the lesser and included offense of manslaughter in violation of La. R.S. 14:31. He also argued that a resentence to life with parole eligibility would not comply with *Miller* or *Montgomery* because he would still have to serve an additional 12 years before being eligible for parole consideration; and, thus, it would not be a meaningful opportunity for parole.

On August 9, 2016, Defendant appeared with counsel for the court to consider the issue of parole eligibility. The trial court noted that it had presided over the trial, was familiar with the facts and circumstances of Defendant's case and that he had not been the shooter, but had been a principal in Johnson's homicide. It stated Defendant was still guilty of second degree murder because he planned with Tolliver to rob Johnson, then put a gun to Johnson's head and pulled the trigger before Tolliver interceded and shot Johnson. It further stated that the cases and statutes directed the sentencing court to reconsider the sentence, not the verdict.

The trial court also found that it did not have authority to set aside the jury's verdict of second degree murder, which had been upheld on appeal and had already become final many years ago. It stated that it had no authority to amend Defendant's sentence, which had also been upheld and become final, except to comply with *Miller*, *Montgomery* and La. C. Cr. P. art. 878.1, to consider the possibility of parole.

The trial court admitted into evidence the PSI report, as well as the record from the institution where Defendant had been incarcerated for the last 23 years. It denied Defendant's request to present mitigating evidence after concluding that further evidence was unnecessary in light of its intention to simply grant eligibility for parole.

The trial court denied Defendant's motion for funding for an investigator and expert psychologist and psychiatrist on grounds that the information was irrelevant in light of the new sentence. Defendant's motion to amend the sentence under the manslaughter statute was denied as untimely.

Defendant's motion to correct an illegal sentence was denied as moot, in light of the trial court's intended ruling. The trial court vacated Defendant's prior sentence and resentenced him to life imprisonment at hard labor, with the benefit of parole eligibility. Defendant and his attorney objected to the sentence.

On August 10, 2016, Defendant filed a motion to appeal his new sentence. The motion was granted on August 24, 2016.

On September 2, 2016, Defendant's counsel filed a motion to reconsider sentence, which was denied on September 8, 2016. On September 8, 2016, Defendant filed a pro se motion to reconsider sentence. On September 9, 2016, the court ordered the state to respond to the pro se motion. There is nothing in the record indicating there was ever a ruling on this motion.

On September 21, 2016, Defendant filed pro se motions to clarify his sentence and to correct an illegal sentence. These motions were denied on September 22, 2016.

*State v. Shaw*, 51, 325 (La. App. 2 Cir. 5/17/17), 223 So. 3d 607, 608-10, writ denied, 2017-1182 (La. 5/18/18), 242 So.3d 569.

Shaw appealed, claiming his sentence was unconstitutional. The appellate court confirmed the conviction, and the Louisiana Supreme Court denied writ. *Id*.

On May 29, 2019, Shaw filed the instant application for writ of habeas corpus, alleging the following duplicitous claims: (1) the State deprived him of liberty without affording him "fair notice" of the legislatively prescribed penalty; (2) the State deprived him of "liberty without affording him due process protection to a sentence legislatively prescribed by the legislature"; (3) "the state court violated the ex post facto clause when it retroactively imposed LSA-R.S. 15:574(E)…"; (4) the State deprived him of liberty "without affording him due process protection of the Eighth Amendment's 'proportionate sentence' announced in Miller [sic]"; and (5) the State deprived him of "due process when it disobeyed a substantive constitutional rule change announced by the U.S. Supreme Court."

On February 13, 2020, the State filed its response. [doc. # 16]. On February 24, 2020, Shaw filed his response. [doc. # 17]. Thus, the motion is ripe.

## Law and Analysis

### I.    Standard of review

Federal courts may provide habeas corpus relief to a state prisoner in accordance with 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Under Section 2254(d), after a state court has adjudicated a prisoner's claims on the merits, an application for a writ of habeas corpus may be granted only if the petitioner shows that the adjudication:

(1) Resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) Resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)—(2).

Federal review under § 2254(d)(1) is "limited to the record that was before the state court." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). A decision is "contrary to" clearly established law if the state court "applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or "confronts a set of facts that is materially indistinguishable from a decision of [the Supreme Court] but reaches a different result." Brown v. Payton, 544 U.S. 133, 141 (2005) (citing Williams v. Taylor, 529 U.S. 362, 405-06 (2000)). A decision involves an "unreasonable application" of clearly established law "if the state court applies [the Supreme Court's] precedents to the facts in an objectively unreasonable manner." *Id*. (citing *Williams*, 529 U.S. at 407-08). "Clearly established law" refers to "the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of relevant state-court decision." *Williams*, 529 U.S. at 412.

Section 2254(d)(2) involves a challenge to factual determinations made by state courts. *Hoffman v. Cain*, 752 F.3d 430, 437 (5th Cir. 2014). Federal courts presume such determinations to be correct; however, a petitioner can rebut this presumption by clear and convincing evidence. 28 U.S.C. § 2254(1).

The AEDPA has put into place a deferential standard of review, and a federal court must defer to a state court adjudication on the merits. *Valdez v. Cockrell*, 274 F.3d 941, 950 (5th Cir. 2001). "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any

possibility for fair-minded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). An adjudication is "on the merits" when "the state court resolves the case on substantive grounds, rather than procedural grounds." *Id*. at 946-47. A federal court reviews de novo a claim not adjudicated on the merits in state court. *Hoffman*, 752 F.3d at 437.

## II.    There was no unreasonable application of federal law.

### 1.    There was no violation of the *ex post facto* clause.

Shaw contends there was a violation of the *ex post facto* clause. An *ex post facto* law is "a law that applies retroactively, especially in a way that negatively affects a person's rights, as by criminalizing an action that was legal when it was committed." *Black's Law Dictionary* 661 (9th ed. 2009). Article I, Section 10 of the United States constitution and Article I, Section 23 of the Louisiana constitution prohibit *ex post facto* application of the criminal law by the state. "The focus of the *ex post facto* inquiry is whether a new law redefines criminal conduct or increases the penalty by which the crime is punishable." *State v. Williams*, 00-1725 (La. 11/28/01), 800 So.2d 790; *State ex rel. Olivieri v. State*, 00-0172 (La. 02/21/01), 779 So.2d 735, *cert. denied*, 533 U.S. 936, 121 S.Ct. 2566, 150 L.Ed.2d 730 (2001).

There is no *ex post facto* violation here. Shaw's criminal sentence has been <u>decreased</u>, not increased, as a result of the Supreme Court's decisions. Before he was sentenced to life without parole for committing second degree murder, but now he has the possibility of parole. Thus, the new law has not negatively affected Shaw's rights and the appellate court's finding was not an unreasonable application of federal law.

### 2.    Shaw's revised sentence does not conflict with the Supreme Court's decisions in *Miller v. Alabama* and *Montgomery v. Louisiana*.

Shaw claims the state court violated his due process rights when it ignored a substantive constitutional rule change issued by the Supreme Court. This is mistaken. In *Miller*, the Supreme

6

Court held that a mandatory life sentence without parole violates the Eighth Amendment's prohibition on 'cruel and unusual' punishment if the offender was under 18 years of age at the time the offense was committed. *See Miller v. Alabama*, 567 U.S. 460 (2012). *Miller* did not prohibit a court's ability to impose a life sentence without parole, but the court must consider how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison. *Id*. at 480.

Shaw's sentence was amended to include the possibility of parole. Thus, his sentence is not unconstitutional under *Miller*. In fact, in *Montgomery v. Louisiana*, the Supreme Court said a state may remedy a *Miller* violation by permitting juvenile homicide offenders to be considered for parole, rather than by resentencing them. 136 S. Ct. 718, 736 (2016). The court further noted that allowing those offenders to be considered for parole ensures that juveniles whose crimes reflected only transient immaturity—and who have since matured—will not be forced to serve a disproportionate sentence in violation of the Eighth Amendment. *Id*. Thus, Shaw's sentence is in accord with federal law and this claim can be dismissed.

### 3. Shaw was not denied fair notice or due process.

Shaw argues he was denied fair notice when he was sentenced to life imprisonment with eligibility for parole under La. R.S. 15:574.4(E) because the sentence was not available at the time he committed the offense in 1993. He maintains "fair notice" and due process prevent the trial court from sentencing him to a sentence that was different than the one he could have expected at the time he committed the offense in 1993, when the only sentence available under La. R.S. 14:30.1 was life imprisonment without eligibility for parole.

In reviewing this claim, the Second Circuit Court of Appeal said:

"The requirements to prove the offense of second degree murder have not changed since the crime was committed in 1993, and the potential sentence for committing that crime

remains life imprisonment at hard labor. The only current difference is that the trial court may impose the sentence with the benefit of parole eligibility, which is a less harsh sentence, even where La. R.S. 15:574.4(E) provides for conditions for parole, because Defendant was not all previously eligible to be considered for parole. Therefore, he was not deprived of fair warning that his conduct would constitute criminal behavior and he was not prejudiced because his potential sentence was not made more severe by the application of La. R.S. 15:574(E)…."

*State v. Shaw*, 223 So.3d at 607.

Louisiana federal and state courts have routinely rejected this "fair notice" argument when it has been raised by other petitioners. *See, e.g., Jackson v. Vannoy*, Civil Action No. 5:19-CV-665-P, 209 WL 4145727 (W.D. La. Jul. 11, 2019); *State v. Jackson*, 51, 527 (La. App. 2 Cir. 8/9/17); 243 So.3d 1093, 1099, writ denied 17-1540 (La. 5/25/18), 243 So.3d 565; *State v. Harper*, 243 So.3d 1084, 51, 539 (La. App. 2 Cir. 8/9/2017); 243 So.3d 1084, 1088-89. The undersigned agrees. The elements required for proof of second-degree murder have not changed since Looney committed the crime and the sentence for committing the crime remains life imprisonment at hard labor. The only change is that the trial court can now allow for the criminal defendant to have the possibility of parole. After the Supreme Court held in *Montgomery v. Louisiana* that *Miller v. Alabama* applied retroactively, Looney was provided counsel for a sentencing hearing on August 9, 2016. He was informed the sentencing court could only reconsider the sentence, not the verdict.

As to his allegations of due process violations, it was unclear how Shaw's due process rights were violated. To comply with *Miller and Montgomery*, the trial court afforded him counsel for a hearing at which his sentence was amended. Procedural due process requires government officials to follow fair procedures before depriving a person of life, liberty, or property. The procedures followed in amending Shaw's sentence were fair. He was afforded counsel, received a hearing, and had his sentence revised in accord with *Miller* and *Montgomery*. There was no deprivation of any constitutional rights. Thus, he cannot show that the state court's decision

regarding fair notice and due process was contrary to or involved an unreasonable application of Supreme Court law.

Finally, Shaw appears to argue, as a result of *Miller* and *Montgomery*, he should have been prosecuted for a lesser crime. [doc. # 17, pp. 17-21]. Such arguments are not cognizable at this point. His conviction for second-degree murder was finalized long ago, and any argument that he should have been prosecuted for a lesser crime because of his youth is moot.

<u>Conclusion</u>

Because Shaw cannot show he is in custody in violation of the Constitution, laws, or treaties of the United States, or that the state courts' decisions were contrary to or involved an unreasonable application of clearly established federal law or were based on an unreasonable determination of the facts in light of the evidence presented, **IT IS RECOMMENDED** that the Petition [doc. # 1] be **DENIED** and **DISMISSED WITH PREJUDICE**.

Under the provisions of 28 U.S.C. 636(b)(1)(C) and Fed. R. Civ. P 72(b), parties aggrieved by this Report and Recommendation have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy of any objections or response to the District Judge at the time of filing. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before the Judge makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS, AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL**

**BAR AN AGGREIVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, this Court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. Unless a circuit justice or district judge issues a certificate of appealability, an appeal may not be taken to the court of appeals. **Within fourteen (14) days from service of this Report and Recommendation, the parties may file a memorandum setting forth arguments on whether a certificate of appealability should issue.** *See* 28 U.S.C. § 2253(c)(2). **A courtesy copy of the memorandum shall be provided to the District Judge at the time of filing.**

In Chambers, Monroe, Louisiana, this 3rd day of March 2020

KAREN L. HAYES
UNITED STATES MAGISTRATE JUDGE